**MOFFITT et al. v. HIEBY.**

No. 11981.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 23, 1949.

Rehearings Denied Dec. 28, 1949.

442

Albert W. Taylor, McAllen, J. Russell Mount, Houston, for appellants.

Charles E. Thompson, McAllen, Ashcroft & Mitchell, McAllen, F. E. Butler, McAllen, for appellee.

W. O. MURRAY, Justice.

This suit was instituted by Mrs. Ursula Hieby against Perry L. Moffitt and Charles Elick, doing business as Green Valley Packers, and The United States Fidelity and Guaranty Company, a corporation, seeking to recover damages for non-performance of a contract dated November 11, 1947, relating to the sale and purchase of certain citrus fruit grown by plaintiff in her orchards located in Hidalgo County, Texas. Judgment was sought over and against United States Fidelity and Guaranty Company as surety upon the bond of Moffitt and Elick.

The trial began to a jury, but at the close of the evidence the court granted plaintiff's motion for an instructed verdict and rendered judgment upon the instructed ver-

dict in favor of plaintiff and against defendants in the sum of $2,866.27, from which judgment Perry L. Moffitt and Charles Elick and The United States Fidelity and Guaranty Company have prosecuted this appeal.

Appellants' first contention is that the trial court erred in refusing to permit the question to go to the jury of whether or not there was a later contract, of March 12, 1948, which superseded and took the place of the earlier contract of November 21, 1947, and in directing a verdict based on the earlier contract.

We overrule this contention. The contract of November 21, 1947, was as follows:

"Green Valley Packers
Perry L. Moffitt                    Chas. Elick
            Telephone 1100
            McAllen, Texas
                        Date 11–21, 1947
Bought Of Mrs. Ursela Hieby
Kind of Produce Ruby Red Grapefruit
Location of Produce No. 79 North ½-317
    S½ 319 Bentsen Subd.
Agreed Price 70.00 per ton
Time of Payment when picked
Probable Harvesting Date, Weather Permitting, Feb. 1, 1948

Buyer not liable for damages caused by any Act of God prior to harvesting. Owner or Seller hereby warrants that the commodities covered by this contract are not mortgaged and seller hereby states that he has not been induced or persuaded to sell such commodities at the price herein named by any representation as to the market by buyer but has made his own independent investigation of same, and further that he has not been induced or persuaded by buyer to breach any contract heretofore executed by seller covering the same commodities. This contract, including the probable harvesting date, is subject to all regulations of State and Federal Departments and Laws.

Seller agrees that if harvesting is paid by buyer it is to be charged to seller's account. Remarks: Clean trees last picking—phone 856 R

            /S/ Ursela Hieby Owner
                            Seller
            Green Valley Packers
            By /S/ Perry Moffitt
                            Buyer

All terms of this agreement have been reduced to writing herein."

Under this contract, appellants (when we here say appellants we mean Moffitt and Elick) had gone into appellee's orchards five times during the month of December and ring picked the orchards, taking the larger fruit and leaving the smaller. After that time they had picked no more fruit and had done nothing towards cleaning the trees of fruit. After February 1, 1948, the probable harvesting date stated in the contract, had passed, to wit, on March 12, 1948, appellants had a conversation with appellee, when an attempt was made to adjust their affairs. It was on this occasion that appellants contend that a new contract was substituted for the old and a novation accomplished.

The alleged terms of the new contract were that appellants would go ahead and clean the trees and pay appellee therefor at the rate of $35 per ton. It will be seen that appellants were agreeing to do only that which they were bound to do under the former contract, and the only change was that appellee would receive only one-half of the price for her fruit as that stated in the former contract. The evidence shows that a novation was not accomplished. According to the testimony of appellants themselves, the alleged new contract was conditioned upon the proposition that they could get the cash with which to pay for the fruit, and it is not shown that they ever got the cash. They never did clean the trees to comply with the terms of either contract. Appellee was ultimately forced to sell the fruit remaining on the trees for the best price obtainable and to sue appellants for the loss thus sustained by her. The burden of proof was upon the appellants to allege and prove that an unconditional and enforcible new contract had been entered into, before the former contract could be set aside on the theory of novation. This they did not do. The new contract was neither unconditional nor enforcible. Western Brokerage and Supply Co. v. Reclamation Co., 127 Tex. 386, 93 S. W.2d 393; Rushing v. Citizens National Bank, Tex.Civ.App., 162 S.W. 460; 46 C.J. 578, § 11; Erwin v. White, Tex.Civ.App.,

54 S.W.2d 867; Davis v. Wynne, Tex.Civ. App., 190 S.W. 510.

There is no consideration shown for the new contract as appellants were doing exactly what they were required to do under the former contract, the only difference being that appellee was agreeing to take one-half of the price she was entitled to under the former contract. Appellants do not point out any valid consideration for the new contract. Money v. Dameron, Tex. Civ.App., 70 S.W.2d 291.

■ Furthermore, the alleged novation took place after there had been a breach of the former contract, which is not permitted. The novation must take place while the original contract remains executory and before a breach of it occurs. 12 Am.Jur. p. 983, § 405; 17 C.J.S., Contracts, § 394, p. 885.

Appellants next contend that the trial court erred in not permitting the question to go to the jury of whether appellee breached an implied obligation resting upon her to properly care for and water her orchards, to the extent that the citrus fruit did not have a normal development and growth and did not reach the size or quality required by appellants in their package fruit business.

The trial court recited in his judgment, with reference to this matter, as follows:

"And it appearing to the Court that Plaintiff's cause is based on a contract in writing and that she has by uncontroverted evidence shown herself to be entitled to recover thereon, unless it appears that such right to recovery be defeated by the affirmative defenses set up by the defendants Moffitt and Elick. And it further appears to the Court that by their pleadings and by their evidence, the defendants have based their defense upon two theories, namely: (1) That after the sale and purchase of the fruit involved Plaintiff did not 'properly care for and water said orchards so as to bring about a proper and normal growth of the fruit thereof' and (2) * * *

"As to the first of such theories, it appears to the Court that it involves no issue for the jury in that as a matter of law, and in the absence of any contractual agreement or pleading of usage or custom, there is no obligation on the seller of personal property after such sale is complete, to continue to enhance either the quality or the quantity of the thing sold."

■ It appears that the trial court assumed that the sales contract of November 11, 1947, was an executed contract and that therefore appellee owed no duty to care for the orchard, unless there was a provision therefor in the contract, or unless the same was plead and proven as a custom or usage. We do not agree with these assumptions. We are of the opinion that the contract at the time it was signed was an executory contract, and that appellee did owe the duty to give the orchard reasonable care until the fruit had been picked in keeping with the terms of the contract.

There are a number of reasons why this contract of November 11, 1947, was an executory contract, some of which are:

(1) There was no delivery of the goods to the buyer when the contract was signed.

(2) Possession, custody and control of the fruit remained in the seller until it was picked. Feb. 1, 1948, was the probable harvesting time.

(3) No money was paid to the seller until the fruit was picked.

(4) Harvesting was to be paid by the seller.

(5) There were pleadings and evidence that the fruit was growing and not fully matured when the contract was signed.

(6) There were no express terms in the contract vesting title in the buyer at the time of the execution of the contract.

(7) Goods were not specified and distinguished but first had to be harvested and delivered to scale and weight.

(8) There were some white grapefruit which had to be separated from the ruby red.

This Court in construing a very similar contract recognized it as executory. Hooper v. Bell, Tex.Civ.App., 210 S.W.2d 870. The writer of this opinion dissented in that case, but not upon this point.

■ It is true that the contract uses the word "bought" but the mere use of this

word is not sufficient to establish the fact that the contract was an executed one when other provisions of the contract fully show the contrary. Elgee Cotton Cases, 89 U.S. 180, 22 L.Ed. 863; Blackwood v. Cutting Packing Co., 76 Cal. 212, 18 P. 248, 9 Am. St.Rep. 199; Walti v. Gaha, 160 Cal. 324, 116 P. 963; Rudy-Patrick Seed Co. v. Roseman, 234 Iowa 597, 13 N.W.2d 347; Western Seed v. Pfost, 45 Idaho 340, 262 P. 514.

■ In the absence of an expressed provision in the contract it will be presumed that the fruit was to be delivered as harvested. Bowers v. Dr. P. Phillips Co., 100 Fla. 695, 129 So. 850; Alsworth v. Reppert, Tex.Civ.App., 167 S.W. 1098; Pfoh v. Porter, 23 Cal.App. 59, 137 P. 44; Hamilton v. Gordon, 22 Or. 557, 30 P. 495; Semple v. Northern Hardwood Lumber Co., 142 Iowa 586, 121 N.W. 23.

In Loval v. Wolf, 179 Ala. 505, 60 So. 298, it was held that if a question arises as to whether the parties intended to make an agreement to sell or a completed sale, a fact issue arises for the jury to decide.

In passing we mention, under the provisions of art. 719a §§ 1–3a, Vernon's Ann. Penal Code, citrus fruit cannot lawfully be sold prior to December 15th without first securing a certificate of maturity, which can only be granted by the Texas Department of Agriculture. The evidence does not show that appellee had secured such a certificate at the time of the execution of the contract, on November 11, 1947.

The contract of sale being an executory contract, it was the duty of appellee as owner of the orchards to give proper care to the orchards until the fruit was picked in keeping with the terms of the contract, which was at least until February 1, 1948. It would seem from the evidence that appellee understood this and stated that the orchards would get water when they needed it. Blackwood v. Cutting Packing Co., supra; Summers Fiber Co. v. Walker, Ky., 109 S.W. 883; Hughes v. Wiley, 36 Kan. 731, 14 P. 269; McAuley v. Harris, 71 Tex. 631, 9 S.W. 679; Wallis & Co. v. Wallace, Tex.Civ.App., 92 S.W. 43; Cox v. Chase, 95 Kan. 531, 148 P. 766.

■ It is true that there were no expressed terms in the contract requiring appellee to give the orchards reasonable and proper care until the fruit had been picked, but reason, justice and fairness require that she do so. It is also true that the contract contained a stipulation that "All terms of this agreement have been reduced to writing herein," but such a stipulation would not relieve appellee of her implied duty to give the orchards reasonable care, which duty is implied by reason, justice and fairness.

■ The trial court was in error in presuming that the contract provided for a completed sale, and he should have submitted to the jury the defense of lack of reasonable care of the orchards on the part of appellee.

■ The trial court also should have submitted to the jury the question as to whether or not the fruit was damaged by an Act of God, to wit, a windstorm which occurred on December 2 and 3, 1947. There was evidence raising this issue and it should have been submitted to the jury by appropriate questions.

The contention of appellee that the windstorm would not have injured the orchards and the fruit if the orchards had been properly watered and cared for, and, therefore, the windstorm was not the cause of the injury because it had to concur with the neglect of appellee before any injury would result, is untenable. Whether the alleged injury to the fruit was caused by an Act of God or by other causes is one peculiarly within the province of the jury. 1 Tex. Jur. p. 703, § 8; Givens v. Vaughn Griffith Co., 146 Fla. 575, 1 So.2d 714.

In Hunt Bros. v. Missouri K. & T. Ry. Co., Tex.Civ.App., 74 S.W. 69, 71, the court said: "That while the negligence of the defendant * * * concurred with the flood in producing said injury, and while, but for said negligence, the damage would not have occurred, still said negligence was the remote, and not the proximate, cause of plaintiff's damages."

See also Bergman Produce Co. v. American Ry. Express Co., Tex.Civ.App.,

262 S.W. 891; Fort Worth & D. C. Ry. Co. v. Lemons, Tex.Civ.App., 258 S.W. 1095.

Appellants' last point is without merit and is overruled.

For the error pointed out, the judgment will be reversed and the cause remanded.