Larry HILL and I. H. Lawson, Appellants,

v.

**CITIZENS NATIONAL BANK OF
DALLAS, Appellee.**

No. 706.

Court of Civil Appeals of Texas,
Tyler.

May 17, 1973.

Rehearing Denied June 14, 1973.

David M. Kendall, Jr., of Woodruff, Kendall & Smith, Robert E. Davis, of McCrea & Davis, Dallas, for appellants.

Henry D. Akin, of Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellee.

DUNAGAN, Chief Justice.

This cause was commenced as two separate suits by appellants against Wayne Cook, individually (hereinafter "Cook") and Wayne Cook Associates, Inc. (hereinafter "Cook Associates") on promissory notes which Cook Associates had given to each of the appellants. After the causes had been consolidated appellants joined appellee, Citizens National Bank of Dallas (hereinafter "Citizens") as a party defendant alleging that Citizens was negligent in handling deposits by appellants causing them damages and further that Citizens knew that the deposits made by appellants were made as special deposits and nevertheless permitted Cook to use the funds so deposited for other purposes.

The case was tried to a jury and its findings were in favor of appellants. Nevertheless appellants' motion for judgment on the verdict of the jury was overruled. As to appellee, Citizens, the court sustained its motion for judgment non obstante veredicto.

Prior to the trial of this case appellants Hill and Lawson took a non-suit as to defendant Cook individually, without prejudice. At the beginning of the trial of this case Cook Associates, by and through its president, Cook, admitted its liability to appellants and participated no further in the trial. Judgment was rendered in favor of appellants and against Cook Associates who did not perfect an appeal and is not a party to this appeal.

This is an appeal from a take-nothing judgment against appellants rendered contrary to a jury verdict in favor of the plaintiffs-appellants.

The salient facts of the case are these: Cook and Cook Associates negotiated a written auction agreement, dated December 15, 1969, with Skidmore-Crook. The terms of the agreement required that Cook find financial backing of $50,000.00. Appellants Hill and Lawson each consented to loan Cook and Cook Associates $10,000.00 to help supply the required sum. On December 22, 1969, Lawson wired credit advice through his bank in Beaumont to the Republic National Bank of Dallas instructing it to credit the account of Citizens with the sum of $10,000.00 "for Wayne Cook & Associates Trust Account for loan to Skidmore-Crooke Manufacturing Company un-

til sale on or about February 20, 1970." A credit note was sent to Citizens from Republic National Bank confirming a telephone call which notified Citizens of the deposit. The credit note also specified that the funds were "for account of Wayne Cook & Associates Trust Account for loan to Skidmore-Crooke Manufacturing Company until sale on or about February 20, 1970." Appellant Hill on the same date made similar arrangements for $10,000.00 to be credited in the Mercantile National Bank at Dallas to the account of Citizens. The credit note from Mercantile to Citizens confirmed that the money was deposited pursuant to Mercantile's telephone instructions that the money be deposited in "Wayne Cook Associates Trust Account by order of Larry J. Hill for Skidmore Crook loan . . ." On December 19, 1969, Cook executed a check in the sum of $20,000.00 to Skidmore-Crook on the trust account. The Skidmore-Crook check was presented to Citizens for payment on December 22, 1969. It was dishonored because the Hill and Lawson deposits had not yet reached Citizens. Thereafter on December 29, 1969, the check was again presented to Citizens for payment but was dishonored because, as Citizens' president testified, Lawson's deposit was placed in the wrong account by Citizens and also the evidence shows that Hill's deposit had been set off against other checks written by Cook prior to December 29, 1969. It is without dispute that the $10,000.00 deposited by Lawson contrary to instructions was deposited to Cook Associates' general account. Exhibits introduced at the trial show that the $20,000.00 deposited by Hill and Lawson for the Skidmore-Crook deal were commingled with funds in both the Wayne Cook Associates, Inc., Trust Account and the Wayne Cook Associates, Inc., general account. The $20,000.00 was set off by the bank against checks written on both accounts, so that when Skidmore-Crook presented its check for $20,000.00, it was dishonored because of insufficient funds in the Wayne Cook Associates, Inc., Trust Account. After the check was thereafter dishonored by Citizens, the auction agreement for which the $20,000.00 was intended fell through. Cook testified that the $20,000.00 was used to pay taxes, salaries and operating expenses of Cook Associates.

Hill and Lawson each originally took a note from Cook Associates in the amount of $10,000.00. The evidence showed and the jury found that at the time Hill and Lawson took the notes from Cook Associates, they were not aware of the misapplication of the $20,000.00. It was on the defaulted notes that both appellants sued. Citizens was later joined in the suit as being independently liable to appellants for mishandling what appellants allege were "special deposits." Trial was before a jury, and in answer to special issues the jury found that: (1) Hill deposited $10,000.00 with Citizens for the specific purpose of a loan to Skidmore-Crook; (2) Hill instructed officers or employees of Citizens that such $10,000.00 was for the specific purpose of a loan to Skidmore-Crook; (3) Citizens knew that such $10,000.00 was for the specific purpose of a loan to Skidmore-Crook; and that (5) Citizens permitted such $10,000.00 to be withdrawn for purposes other than that for which Hill instructed the bank to use the money. The findings of the jury in response to issues six through ten established the same facts as to the $10,000.00 deposited by Lawson. In issues eleven through fourteen the jury found that the bank placed the funds into an account other than the one specified by the deposit instruction, that such action was negligence, and that such negligence was a proximate cause of financial damage to Lawson. The jury's findings to issues fifteen and sixteen were that Hill and Lawson did not have knowledge of the misuse of the $20,000.00 at the time they accepted the notes from Cook Associates and the jury found that the acceptance of the notes was not meant to extinguish the obligation arising from the misuse of the $20,000.00 (issues seventeen and eighteen). In connection with the case at bar the jury

finally found that Hill and Lawson suffered financial loss by reason of the $20,000.00 not being turned over to Skidmore-Crook and that the actions of Hill and Lawson did not lead to the failure of the auction agreement between Cook Associates and Skidmore-Crook.

After all parties had closed and before the case was submitted to the jury, Citizens made a motion for directed verdict which appears to have been overruled. Once the jury returned with its verdict, plaintiffs made a motion for judgment on the verdict, which was denied, and Citizens made a motion for judgment non obstante veredicto, which was granted.

The court by its judgment ordered that plaintiff Hill have and recover from defendant Cook Associates $9,100.00, it appearing that $900.00 had already been paid on that note. Plaintiff Lawson was to recover $10,000.00 from Cook Associates and each plaintiff was ordered to take nothing as far as its suit against Citizens was concerned. The court's judgment also ordered that "all relief not herein granted be and the same is hereby denied." Since a review of the record finds ample evidence to support the findings of the jury on all issues, it must be assumed that the court ordered a take-nothing judgment as to Citizens based on one of the legal theories urged in Citizens' motion for judgment non obstante veredicto. Crom v. County of Cameron, 310 S.W.2d 664 (Tex.Civ.App., San Antonio, 1958, n. w. h.).

The court in its judgment did not specify any specific ground upon which it sustained Citizens' motion for judgment non obstante veredicto. The judgment does recite that Citizens' motion "for judgment non obstante veredicto is granted." Such a judgment is only authorized in cases in which an instructed verdict would have been proper, or where a special issue finding has no support in the evidence. Eubanks v. Winn, 420 S.W.2d 698 (Tex. 1967); Happ v. Happ, 160 S.W.2d 227 (Tex.Civ.App., San Antonio, 1942, writ

ref'd w. o. m.). If it cannot be said that defendant was entitled to a directed verdict, that is, that as a matter of law he was entitled to judgment prior to the case being submitted to the jury, it was error for the court to enter a judgment notwithstanding the verdict of the jury. Greene v. Bates, 424 S.W.2d 5 (Tex.Civ.App., Houston (1st) 1968, n. w. h.). In considering such a motion, all testimony must be considered in the light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962); Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952). We thus must examine the grounds put forward by appellee in its motion for judgment notwithstanding the verdict to determine whether any of them would have supported a directed verdict. Having reviewed the record, we find that all the findings of the jury (none of which are attacked in the motion for judgment notwithstanding the verdict) are amply supported by credible evidence, so we turn to the legal theories on which appellee argued it was entitled to a directed verdict.

The plaintiffs' cause of action against the bank was based on their contention that the deposit of the $20,000.00 amounted to a "special deposit" and as such was to be specially handled by the bank so as to prevent its being applied to any purpose other than that specified at the time of deposit. Where monies are deposited with a bank and the bank accepts the deposit with instructions as to its use, the bank is uniformly charged with the obligation of seeing that the funds are so used. Narrell v. First Nat. Bank of Temple, 241 S.W.2d 361 (Tex.Civ.App., Austin, 1951, n. w. h.); Banco Longoria v. El Paso National Bank, 415 S.W.2d 1 (Tex. Civ.App., Eastland, 1967, writ ref. n. r. e.); Citizens National Bank of Beaumont v. Francis, 427 S.W.2d 645 (Tex.Civ.App., Beaumont, 1968, writ ref., n. r. e.); Hud-

nall v. Tyler Bank and Trust Company, 458 S.W.2d 183 (Tex.1970); 10 Am.Jur.2d Banks sec. 342. In 9 C.J.S. § 274, p. 565 under Banks and Banking is found this statement:

> "The general or special character of an account is a question of fact, to be determined by the purpose for which the deposit was made, the relationship existing between the depositor and the bank, and the intention of the parties as expressed in their contract and as revealed by the facts and circumstances of the case, such as the words and acts of the parties and their course of business." See also Hudnall v. Tyler Bank and Trust Company, supra.

The jury found that Citizens had received a deposit with instructions to apply the deposit to a special purpose, that the bank negligently failed to carry out its obligation with regard to the deposit, and that such negligence was a cause of financial injury to the plaintiffs. Since we believe all the findings of the jury were properly supported by the evidence, the law regarding special deposits and the verdict of the jury entitled the plaintiffs to judgment unless the bank was for some reason entitled to a directed verdict as a matter of law. Greene v. Bates, supra.

■ Initially appellee in its motion for judgment non obstante veredicto contended that the taking of the notes by Hill and Lawson from Cook Associates showed the existence of the essential elements of a valid novation, and that the bank was thus relieved of its liability. Bearing in mind that the jury found Hill and Lawson were unaware of the bank's misuse of the funds at the time they accepted the notes from Cook Associates, we are faced with determining whether the acceptance of the notes operated to form a valid new agreement relieving Citizens of any prior obligation it might have had under the original agreement. That is, has the bank established the novation defense as a matter of law? It is clear in our law that the giving of a note for a debt does not extinguish the original indebtedness unless that appears to be the intention of the parties. That intention is never presumed to exist absent proof by the party asserting the novation. Smith v. First Pasadena State Bank, 401 S.W.2d 123 (Tex.Civ.App., Houston, 1966, n. w. h.). The jury found that the intent of Hill and Lawson was, in fact, not to extinguish any prior obligations. It was incumbent on the bank to show that Hill and Lawson intended to release the *Bank* from its obligation to them if a novation was to be established. See 41 Tex.Jur.2d Novation sec. 11. The bank argues that the notes extinguished the prior indebtedness of Cook Associates and that such a novation releases them. This argument ignores the fact that the responsibility of the bank to Hill and Lawson was independent of the obligation of Cook Associates. The obligation the bank owed Hill and Lawson was a duty of care of their special deposit, not an obligation arising out of the indebtedness of Cook Associates. Hudnall v. Tyler Bank and Trust Company; Narrell v. First Nat. Bank of Temple, both supra; City State Bank v. National Bank of Commerce, 261 S.W.2d 749 (Tex.Civ.App., Fort Worth, 1953, writ ref., n. r. e.). That duty of trust could not be cancelled by an agreement which at best replaces a prior indebtedness, not the duty of trust. The new agreement must be a substitute for the old for a novation to be effective. Slaughter v. Hall, 63 Tex.Civ.App. 473, 133 S.W. 496 (1910, n. w. h.). Since the acceptance of the notes had nothing to do with the bank's obligation to Hill and Lawson, it could not work as a novation releasing the bank from its obligation.

■ The bank next urged in its motion that the Skidmore-Crook agreement failed due to the actions of the plaintiffs, and that when the agreement failed, the two $10,000.00 deposits became general deposits, thus relieving the bank of its obligation as trustee (if, in fact, there ever were such an obligation) as a matter of law. The jury found in issues twenty through twen-

ty-two that the actions of the plaintiffs did not cause the failure of the agreement with Skidmore-Crook for which the deposits were intended. Even if the jury were wrong, however, there seems no reason to release from its obligation the bank simply because the purpose for which the deposits were made failed. Numerous cases on the subject of special deposits seem to view the title of the special deposit as remaining in the depositor until the deposit is used for its intended purpose. City State Bank v. National Bank of Commerce; Narrell v. First Nat. Bank of Temple, both supra; Tyler County State Bank v. Rhodes, 256 S.W. 947 (Tex.Civ.App., Beaumont, 1923, n.w.h.); Banco Minero v. Ross & Masterson, 138 S.W. 224 (Tex.Civ.App., San Antonio, 1911, aff'd 106 Tex. 522, 172 S.W. 711 (1915)). Thus, no matter when the special deposit is misused or misapplied a cause of action arises on behalf of the depositor for monies had and received. The special issues found by the jury establish all the elements of a special deposit necessary to saddle the bank with responsibility under a trust or agency theory, and since the findings of the jury are not attacked and are supported by credible evidence, they must be accepted as true. Hume v. Schinz, 90 Tex. 72, 36 S.W. 429 (1896).

 Appellee next asserted in its motion that the evidence conclusively showed that plaintiffs and Cook Associates were joint venturers, and that as such the acts of Cook Associates became as the acts of plaintiffs, and they therefore could not complain of the misuse of the $20,000.00 deposit. Numerous cases are cited to support appellee's contention that joint venturers must look to each other for recovery of losses caused by the malfeasance of fellow venturers. With this proposition there can be little quarrel, but plaintiffs here do not seek to recover from the bank losses caused by the mal- or misfeasance of Cook Associates. They seek to recover from the bank losses caused by its misuse of the deposits over which it had a special duty of care on behalf of Hill and Lawson. See

10 Am.Jur.2d Banks sec. 342. Even if, as a matter of law, Hill, Lawson and Cook Associates were joint venturers, this does not absolve the bank of the duty of care it had to see that the special deposits made by Hill and Lawson were not misapplied. Steere v. Stockyards Nat. Bank, 113 Tex. 387, 256 S.W. 586 (Tex.Comm'n App., 1923, op. adopted).

 The essential elements of a joint venture are: (1) a mutual right of control, (2) a community of interest, (3) agreement to share profits as principals, and (4) an agreement to share losses, costs or expenses. Chandler v. Herndon, 450 S.W.2d 703 (Tex.Civ.App., Corpus Christi, 1970, err. ref., n.r.e.) and cases therein cited. We find no evidence of any mutual right of control or any agreement to share losses, costs or expenses. Thus the asserted defense of joint venture fails and therefore cannot be sustained.

 Appellee finally argued in its motion that as a matter of law, Hill and Lawson elected the remedies available to them when they sued Cook Associates on the notes, and they are therefore precluded from suing the bank. Any other construction of the acts of plaintiffs would arguably allow a double recovery. Plaintiffs in the Second Amended Petition sought to impose on Cook Associates and Citizens joint and several liability for the $20,000.00 in lost deposits, though the liability of each defendant was predicated on a different legal theory. As long as a judgment against the defendants is joint and several as prayed for in the petition, it is difficult to see how the possibility exists for a double recovery.

 Having examined all the available theories on which a motion for directed verdict in favor of Citizens could have been sustained, it is our decision that none of them entitle Citizens to a judgment as a matter of law, thus the verdict of the jury may not be disregarded and judgment must be entered thereon. Therefore, that por-

tion of the trial court's judgment that the appellants "take nothing by their suit against the defendant, Citizens National Bank of Dallas" is reversed and judgment rendered against the appellee and in favor of appellant Larry Hill in the sum of $9,100.00 and appellant I. H. Lawson in the sum of $10,000.00 with interest from the date of the trial court's judgment. Article 5069–1.05, Vernon's Ann.Tex.Civ.St. In all other respects the judgment is affirmed.

Judgment reversed and rendered in part and affirmed in part.